You are here at day two of this panel's sitting for the week. We have the pleasure and delight of having join us a district judge from the Eastern District of Texas, Jeremy Knodel. He says it's the first time he has sat with the Fifth Circuit. I hope we don't convince him that it should be the last time. I enjoyed having you. We have four cases this morning. We'll see how far we go and whether we take a break or not at some point. First case of the day is United States v. Isaac Romero. It looks like Mr. Lessman gets to go first. Your Honor, first I would like to, for the record and for the court to hear, that I found a case that I believe has been shared with y'all that I found late last night. I have not filed a 28-J. I will have that filed today. Show a copy of this to opposing counsel. Yes, sir. I gave him one. And there is only one paragraph in here that I need to point out to the court. I've pointed that out to opposing counsel, if I may. If you would look at the last page of the opinion, there is the last paragraph that starts with, although West properly cites the general rule. That paragraph specifically cites and uses, in this case and for that point, the United States v. Villalobos. The first issue that I brought up is the fact that the Hernandez case, which was used in our resentencing, said that there were two lines of cases. Villalobos was the second line. And the other one started with this. And so therefore, the Hernandez panel from 2022 said that, hey, look, Villalobos and the cases that followed it, they messed up. That was incorrect. So now we're really to the fifth, I guess, panel looking at this situation, because we had Villalobos. I mean, we had the C case, Carrizales, I think. We had the C case. Then we had the V case. Then we had the Hernandez case. And then now we've got this, the West case from April 25th of this year, going back to Villalobos. And now this is before y'all. And I mean, this really makes a big difference, because in my briefing, real quickly, you saw that the policy of Hernandez really stands out amongst our nation. It's the only one like that, given the government a second bite at the apple. I mean, if we are in a district court, and me as a CJA panel attorney, I'm there before my district judge, and I'm ready for a fight. It's the government. It's the FBI. It's the case agent. It's the United States Attorney's Office that, unlike my local district attorney, has the ability to choose the 200 cases or 300 cases that they may file that year and take in. They get to reject. It can go over to the DA's office, unless the United States attorney wants to take it. They have that burden. It's the entire United States of America versus Isaac Romero. Can I just interrupt for a second? Are you saying that Hernandez is inconsistent with West? Yes. I mean, that's the basic question here. So there's a conflict among the circuit. Absolutely, there is. Absolutely. I'm sorry, on what issue? What issue are we talking about? Issue number one. Yeah, what is that? That is the fact on resentencing. Does the government have the opportunity to present evidence? Have a second bite at the apple. Hernandez says yes, right? Hernandez says yes. There was a conflict before. Hernandez identifies a conflict between the other two cases. It says Villalobos was second. And therefore, we have to go back to the first one. Carzales, I think is the name of it. OK. So we have to follow Hernandez, right? I don't know. Why not? Because right here, you've got West from two months ago, where y'all specifically used Villalobos as a court. With respect to this issue? Yes, sir. Whether the government can introduce additional evidence on remand for resentencing? Yes, sir. We point out the government generally does not present new evidence on remand when reversal is required due to the failure to present evidence originally. And then it gives out the exceptions that Villalobos specifically gave you. And none of those apply here. If Hernandez, I mean, I've not read this case that you just presented to us. But if Hernandez controls, how do you get around it? You may not. But that's the whole problem. I mean, you've got, now you've got West. And also, under our rule of orderliness, West is the irrelevant case. Under our rule of orderliness, it's the first case that set a rule for the Fifth Circuit. And to some extent, it's going back to original sources. So you've given us a new case to ponder. And I don't know if that panel was aware of Hernandez, aware of the conflict that Hernandez may or may not create. What I'm saying is we will look at the new authority. And you can certainly make your argument that we should not allow new evidence. But there's case law that allows it. And we need to figure out how our rule of orderliness will appropriately apply to this issue. Actually, I think Hernandez misspoke the policy. The difference is there's two different things. And follow me here for a moment. When somebody has a burden to prove something in a court, there is a question of no evidence versus some evidence. I don't care if it's a scintilla. There is a matter of law that y'all do a review, sufficiency versus fact. That's how it applies at the appellate level. Summary judgments. Whether it's no evidence or whether there is evidence. If there is no scintilla of evidence, you're entitled to a summary judgment. You're out the door. This case, what Hernandez misunderstood was that when you look at Villa-Lobos and the Carrizales case, Carrizales was a fact issue where the government had some evidence. Where Villa-Lobos was talking about a situation where the government, like here, had completely failed to even try. So when I briefed all that, and I know you've looked at the briefs, you know, for everybody in the United States, the Tenth and the Ninth Circuits have a policy where they come out and they, instead of saying you never get a second shot, they come out and they say, hey, look, you're not going to get a second shot if you didn't even start. If you failed completely to put on evidence, just like West is citing. And the reason why West is good is because all it's doing is restating Villa-Lobos. Look, United States v. Hernandez, I'm reading from it. Where was that? There are special circumstances that justify an exception to the rule, including, quote, where the government's burden was unclear. Villa-Lobos. So Hernandez is citing Villa-Lobos. I understand. So is West. So what's the conflict? The conflict is, do you have Hernandez in this case, was presented to Judge Albright and said, Hernandez comes out and says, at re-sentencing, we get to put on new evidence. We get a second bite at the apple. And Villa-Lobos does not. West says the general policy is you don't. If you fail to put on evidence in the courtroom, I mean, this case was, there was a PSR. There was an enhancement that the government wanted. They asked for it. They asked for an amended PSR. The probation department gave it to them and said, hey, the government will put on evidence at sentencing. Y'all reversed it because the government completely failed to put on any evidence. So now it went back to Judge Albright, and then they got a second shot to turn around and do it. If we disagree with you that Hernandez controls here, what's your other argument? The second issue is factually. The proximity of the gun and the magazine, the second issue here is there's insufficient evidence for the gun and magazine to be in close proximity. As I understand the way that Judge Albright reviewed this and maybe the way it was presented, the proximity that was being considered is how close was the initial part of the firearm that was thrown out and landed in a creek, how close was it to the magazine? Why would that matter? He had no control over it when it was in the creek and in the way the magazine landed. The issue would be, can you get both of those objects back into the car where he did have control? So tell me, how did you understand this was analyzed by, presented to and analyzed by the district judge? How close the objects were after they were thrown from the vehicle? We disagree that the magazine was thrown from the vehicle. Please answer the question precisely. I'm trying, Judge. Okay, so how did Judge Albright analyze the proximity issue? I don't know. He didn't state his actual, at the hearing, he didn't state his thought. He just made his ruling. I mean, I made my pitch and Mark Frazier made his pitch and we presented our evidence and then he came back and he agreed to apply it. Well, I was reading the transcript of it and there was conversation about how close they were out in the creek and wherever the other location was.  I was wondering if that was the way it was being presented to him and I don't understand why that would matter. Because did it come out of the car? That would be all that proximity out there would be showing. Right. You've got to get both objects back inside the car. And that's what we argued that never could have happened because factually, going backwards, that's why I talked about on the, that's why when you read the transcript, the questions about could a girl, a woman, throw in something out of a moving vehicle, possibly throw something that one time there's one throw where one part of it lands here in the bottom of a creek, a great big deep creek, and the other one somehow land 100 feet away up a big bank over in a rock garden. There's one throw. So how do two pieces go that far apart? Well, there was thrown, it was, I thought it was thrown from a moving vehicle. It was. So isn't there at least some evidence that the gun and the magazine were in the car at the same time together? No, sir. The only thing, the only thing that the government has, period, to come back and try saying that it was in the gun, in the thing together is in the factual basis, there's one little cantation that they talk about where they say, hey, he admitted. And I mean. Well, no, I'm referring to the proximity or the location of the magazine in relationship to the car where the defendant was driving or where he was at. The magazine, so when you come down the street, the magazine would have been found where next to the street where the car was driving, but it would have been like, that's a pretty good size bridge. It would have been way on the other side of the bridge. From the car. From where the throw was. The throw was on the bridge. Am I saying that right? I don't know because what, how do we know where he threw it? She threw it. How do we know where it was thrown? Because the officer said as it was going across, they threw and then one piece landed in the  So I mean, for it to land in. But isn't it possible the officer didn't see the other throw? No, sir. Everything was on video. I mean, that's not what the case agent reported. And the police reports that I admitted, that's not what they say. I mean, they had cops. They had, I mean, it was like a train. You thought it was a parade the way this thing ended up. He was being followed by DPS. And I mean, they had their camera. They were on it. They were on it so good that they saw the throw immediately. One of the DPS officers got out, went on the bridge, and looked for the gun. Saw it down there and watched it the whole time. I mean, there's no doubt that the gun came out of that car. The question is, if all this surveillance was going on and observation, this magazine that somehow appears later in the day when none of these cops saw it, anything else, I mean, how does that get related back? That's what we're saying insufficient evidence. I mean, the government, you can't make that connection. I know I'm down to a minute. Is there something specific? All right, counsel. We have your argument. Thank you, Judge. May it please the court. Zachary Richter for the United States. Two points. First, the district court was well within its rights to accept additional evidence on remand. This court's earliest decision on this issue is in Corrales v. Alta. And in that decision, this court emphasized that the paramount concern is with truth in sentencing and trying to get all the relevant evidence before the district court at sentencing. One distinction the defense counsel is making is between initial decision of no evidence versus insufficient evidence. Does that distinction stand up under what you're telling us? No, Your Honor. It doesn't make sense in light of the law or in light of the record in this case. With respect to the law, Hernandez rejected just that sort of distinction. The defendant in Hernandez said there's a difference between clarifying the evidence versus establishing a fact in the first instance. And this court in Hernandez, in reconciling this court's cases, said that that wasn't a distinction that made sense in light of Corrales v. Alta. And it's also not a distinction that appears anywhere in Villalobos, which is the case the defendant is relying on to make it. Also, in light of the record in this case, this was not a case in which the government produced no evidence at all, such that it had to establish a fact from scratch at resentencing. First, if you're looking at the enhancement, we have to prove compatibility. And as my colleague alluded to in his opening presentation, the defendant did admit in pleading guilty under oath in his factual basis that the government recovered the firearm and its magazine. That's at least some evidence of compatibility. That might not have been enough to get us over the hump in the first appeal, but at least there was that. There was also proximity because the PSR addendum, which the district court can and did adopt as evidence, stated that the magazine and the firearm were found near each other and noted that the government had documentation showing that this large-capacity magazine was found nearby the firearm. Well, the issue in close proximity is usually you have something like a vehicle and you have pieces of something or in a house or other residence. It's not where things have been discarded and where are they in close proximity. And certainly there's no control being exercised by the defendant once they were released from the car. Is it factually basically a given that because of video of the fleeing car that there was only one throw outside of the car? No. Or is it, I mean, I don't know if Albright made any kind of fact finding on this, but it does seem to me one way this might have worked, if there's any evidence to support it, is gun gets thrown out first, magazine gets thrown out second, and that's why they're so far apart. But is there any evidentiary support for that? Yes. I read the sentencing and this court can read the sentencing as Judge Albright finding that both objects were thrown from the car. This was a high-speed chase. At 60 miles per hour, two objects thrown one second apart would end up 90 feet away from each other. Is there video of the throws and does video only show one throw? I haven't seen the video and it's not in the record, Your Honor. It was never admitted in the district court or submitted by the defense at any point in the hearing. So what we have is a statement by one of the pursuing officers that said that there was an object thrown from the car. There's no countermanding statement that says, and there was only one object thrown from the car, and everybody who was involved in a high-speed chase through a small city could for sure tell that there was only one object thrown from the car. And so when you look at the evidence, you have a firearm without a magazine found in the creek, 90 feet away, you have a magazine found that matches that firearm that's missing a magazine. They have the same logos, same manufacturers, and the officer who tested them said that they fit together. And so what Judge Albright joked about at sentencing was, well, did you think a UFO planted this magazine here? Because all of this evidence points to the idea that both of these objects were thrown from the same car and therefore were proximate while they were in the car together, as the defendant admits at page 34 and 35 of his brief, where he says, if these two objects were in the car together, then they were in close proximity for purposes of the guidelines. Just so we're not in the realm of speculation, I'm looking at a map of where these things were found. It was Defendant's Exhibit 1 at resentencing. I'm looking at a map. I'm looking at a bridge. What is this road? 93? Yes, I believe it's called 2nd Avenue. 2nd Avenue. It intersects with North Pearl Street. That's correct. Okay. Agent Wood testified where the magazine was found. I believe there's a black circle drawn on the map as part of the exhibit. That's right after a bridge. The bridge is where the gun was found, right? Right. I think you're referring to page 434 of the record. That's, you got it. And the gun was found in the middle of the creek. Yeah, it's marked F on the map. That's correct. And then there's a circle where the magazine was found. Right. How far apart is that? The agent has estimated the distance in testimony at 90 feet. 90 feet. 90 feet, which is the distance between home plate and first base, essentially. Okay, home plate and first base. So, the gun is found at home plate or first base? Say home plate. If you're sprinting as the district attorney. Yeah, home plate. Okay, so the gun is home plate. Doesn't have a magazine in it. The magazine is found at first base. That's right. And the magazine fits the gun. That's correct. Okay. Same manufacturer. So, that's why it was plausible. And remember, that's the standard that we're up on review on. Judge Albright only had to make a plausible determination to avoid clear error. And it's certainly plausible that this magazine matched this firearm, as the defendant himself admitted in pleading guilty under oath. I wanted to address, as well, the idea that this court is somehow an outlier from other circuits. If you look at all of the other decisions, circuit decisions the defendant cited, all of those cases involve situations in which the defendant had not preserved error in the district court the first time around. I mean, I'm sorry, had preserved error in the district court the first time around. So, in every one of those cases where another court of appeals said that the government shouldn't be allowed to have another chance, the defendant had put the issue before the district court, and the government was on notice that the government needed to step forward with evidence and prove its point. In this situation, not only do we have the record that I referred to earlier that was at least some evidence before the district court in the original sentencing, but the defendant at the original sentencing did not object. There was no dispute. The government said there was no dispute. The defendant didn't correct that. And so, there was no reason for the government or the district court to believe that they needed to have 30 or 45 minutes worth of testimony about this point to establish a record in the district court about something that was undisputed. And I just note that this rule makes a lot of sense because not only are there the concerns that this court talked about in Corrales v. Alta, about truth and consistency in sentencing, but when a district court, a busy district court is hearing a bunch of sentencings, if an issue is undisputed, there would be no reason for the district court to prompt the government or the government to step forward and say, hey, we want to present all this testimony and evidence to you on a completely undisputed point. It also makes sense. What's your response to the argument that Hernandez is inconsistent with other decisions by this court, including this new case, West, which I don't know if you've had a chance to review? Just briefly, Your Honor. First of all, the prior opinion, the first opinion that, as Hernandez points out, is Corrales v. Alta. And under the rule of orderliness, the rule of Corrales v. Alta has to control over whatever the most recent decision would say. But even aside from that, even West says that there's only a general rule. And the other cases from this circuit talk about a general rule and talk about exceptions. One of those exceptions is when the government's burden is unclear. And in this instance where the defendant didn't object, where there was at least some information in the record that could have supported this enhancement, it certainly was to use the term Hernandez uses, at least a little bit fuzzy what the burden for the government was. And in those circumstances, Hernandez said, even if you apply this alternative rule that comes from some other circuits, still you arrive at the result that the government would be allowed to present more evidence at resentencing on remand. And also, most circuits defer, as this court has, for instance, in West. In West, this court said, we're going to let the district court decide in the first instance whether to hear more evidence on resentencing. That's also what the court has done in cases like Villalobos, which the defendant is relying on. And many of the cases that the defendant relies on here from other circuits also defer to the district court to decide that in the first instance. And there's no indication here that the district court abused its discretion in looking at this situation and deciding to hear more evidence, because there's just no absolute rule against it. And there was nothing in this court's mandate in remanding the case that indicated that the district court could not hear evidence. And that's really the critical feature that Corrales v. Alta focuses on is, what did this court say in remanding? And when this court does not say something in remanding, the district court should have an option. But what did the mandate say? I was going to ask that earlier. Just remand for resentencing? Is that the language? OK. That's right. The sentence was vacated, and it was remanded for resentencing. That's identical to the decree to language in Hernandez, which this court said in Hernandez was allow the district court to accept more evidence at resentencing on remand. And if there are no further questions from the panel, I'll yield the remainder of my time to the court. Thank you. OK. So in response to that, this court's already heard whether at original sentencing the government knew the burden. Y'all have already reversed it. We're here for the resentencing. I mean, but real quickly, did they know what they're supposed to do? They're the government. It's their burden. They asked for something. The probation department amended the PSR and said the government's going to put on evidence. In the first sentencing? In the first sentencing, right. Did the defendant object to the application of this enhancement? Nope. But that's already ruled on. That's already been done. That's why we went back. It's already been done. Y'all reversed it and said they didn't do their job. They knew what they're supposed to do. We're here on the resentencing. And at the resentencing, the testimony came down from the officer while I was doing those maps. He's saying, everybody's doing a play by play. The officer saw something thrown out and announced it over the radio. It was a play by play. And there's no word where it says 60 miles an hour. I mean, it's a farm road in Belton, Texas, that's used as a second avenue. It's a major street that's a throughfare. There's nothing. When high speed, what is it, 30 miles an hour, 40 miles an hour? I mean, what's the speed limit? We didn't get into that. He made a passing comment of high speed. What city is this? Belton, right next to Temple. How many people live in Belton? 20,000 there is the county seat. 20,000 there. It is I-35 and I-14 going to Killeen. I just haven't been to Belton. What are the chances? So this is a 17-round magazine that fits the same manufacturer of this gun. What are the chances that this magazine is just randomly there? I have no idea because FN is some big manufacturer. I'm not huge. I've got guns, but it's not like I'm a big collector. I mean, FN, when I researched this and asked the age, I mean, it's a big, I mean, it's like Remington. Yeah, how many nine millimeters do they make? I mean, you go to, you go to- Is it common to find magazines on the side of the road in Belton, Texas? I have no idea. I know that their office in Waco has a special task force in Killeen because all the gang activity in Killeen and Bell County, that there's a special federal task force addressing this. I know that the United States government is putting special effort in that county because of this, because there's shootings and because there is that. I know that's not part of the record, but I mean, you ask a question, I can give you that. I know Judge Albright deals with that. And I know that Bell County is the county out of the entire Waco division that as a CJA panel attorney, we come in and I've got felons in possession of firearm charges. Y'all can look at the statistics in your thing and you can see all those are pretty well out of Bell County because the federal government's trying to address the gang and gun problem. I'm not saying that everybody in every neighborhood's finding magazines on the thing, but this magazine right here, Nolan Creek, is a big old creek. I mean, I know it's- Well, the gun was found in the creek, right? Right. So- Magazine was found in a rock garden. Yeah, so- A few feet away. So the baseball field, I could throw something and maybe I can throw something from pitcher's mound and part of it gets at the home plate and part of it gets at first base. Maybe I can magically do that. Can I do it where it goes up a bank as high as that? It goes over the rocks and the trees and lands in this rock garden that has the decorations and the rocks and everything, and then it magically lands right where it did. I mean, you know, so the factual point on this deal, I mean, you just think logistically and that's where we were talking with the case agent going over it, who he had been there but he didn't watch, but he talked about it was a play by play. It was a play by play. They're calling it as they're following it on the radio. There's a throw. That's how they knew to get an officer out. One stopped. One of them that was in the line got out, stopped right there and watched that thing the whole time. Didn't lose sight of it. All right, counsel. Thank you. Thank you both for helping us understand this case. We'll take it under advisement.